**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JODIE TURNER, *pro se*, ) | CASE NO. 5:24-cv-01573 |
| ) | |
| ) | JUDGE DAVID A. RUIZ |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LIBERTY MUTUAL INS. *et al.*, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendants. ) | |
| ) | |

Now pending is Plaintiff Jodie Turner's *pro se* Complaint against Defendants Liberty Mutual Personal Insurance Company ("Liberty") and Charles Bannon ("Bannon")[1] collectively "Defendants"). This action was originally filed in state court on August 19, 2024, and subsequently removed by Defendants. (R. 1). Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). (R. 4). Plaintiff has filed an Opposition to which the Ohio Defendants have replied; Plaintiff has filed a surreply. (R. 7, R. 8 & R. 9).

The Complaint stems from a house fire at Plaintiff's rental property in Akron, Ohio that occurred on October 2, 2022. It raises the following causes of action: (1) Bad Faith; and (2) Breach of Contract (R. 1-1, PageID# 10-14).

For the following reasons, the Court grants Defendants' Motion to Dismiss.

---

[1] Despite being named as a defendant, Bannon is not mentioned in the Complaint, and his connection to this matter is unclear based on the face of the Complaint. Only from Defendants' memorandum in support of the motion to dismiss does the Court learn that "Bannon [was] an individual adjuster involved in Plaintiff's insurance claim." (R. 4, PageID# 153). According to Defendants, "[a]lthough Bannon uses a [Pennsylvania] PO Box as the address in his email signature, Bannon is a resident of Ohio." (R. 4, PageID# 154).

## I.    Factual Allegations

A fire occurred at Plaintiff's property located in Akron, Ohio (the "Property") on October 2, 2022. (R. 1-1, PageID# 10, Compl. at ¶ 1). The Property was insured at the time by Liberty Mutual Personal Insurance Company (the "Policy"). (*Id*. at ¶2, Exh. A). Plaintiff filed a claim related to the Fire with Liberty.

On July 7, 2024, Plaintiff received a two-party check issued by Liberty to Plaintiff and American Title Solutions for $148,156.49. (R. 1-1, PageID# 138, Exh. E to the Compl.)

Section I of the Policy addresses property coverage and is entitled "Perils Insured Against" Coverage C thereunder and covers "direct physical loss to the property" caused by fire, explosion, and smoke. (R. 1-1, PageID# 28-29). Under "Section I – Conditions," there is a "Suit Against Us Provision," which states that "[n]o action can be brought unless the policy provisions have been complied with *and the action is started within one year after the date of loss*." (R. 1-1, PageID# 32, Exh. A to the Compl., ¶8) (emphasis added).

Plaintiff filed his Complaint in state court on or about August 19, 2024 in the Summit County Ohio Court of Common Pleas—*Turner v. Liberty Mutual Insurance, et. al.*, Case No. CV-2024-08-3567. (R. 1-1, PageID# 10).

Plaintiff alleges Liberty breached the contract by "not honoring the full amount of" the homeowner's policy. (R. 1-1, PageID# 4, ¶1).

With respect to bad faith, Plaintiff alleges that Liberty "was not acting in good faith and was giving Jodie Turner the run around regarding his homeowner's insurance policy." (R. 1-1, PageID# 10, ¶4). Plaintiff identifies the following actions as examples of Liberty's alleged bad faith: (1) mailing a check to Plaintiff's rental property that was subject of the policy's coverage and sustained fire damage; (2) refusing to purchase the land where the property was situated;

2

sending a check in the names of Plaintiff and his title company; (3) not disbursing all funds to which he believes he is entitled; (4) not receiving a response when asking for an extension of time to complete the rebuild of his home; (5) he was not treated like a fire-victim and was interviewed multiple times; (6) Liberty tried to interview another individual who did not have an interest in the property; and (7) Liberty gave a different breakdown of the settlement per depreciation. *Id*. at ¶¶5-25.

## II. Federal Rule of Civil Procedure 12(b)(6) Standard

When ruling upon a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), a court must accept as true all the factual allegations contained in the complaint. *See Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *accord Streater v. Cox*, 336 Fed. App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.] Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).

"Although *pro se* pleadings are liberally construed," such a claim remains subject to dismissal "if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact." *Dixon v. Coleman*, No. 3:17-CV-01476, 2020 WL 435378, at *2–3, *5 (N.D. Ohio Jan. 28, 2020) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996)).

### III. Analysis

First, with respect to Defendant Bannon, despite being named as a defendant, Bannon is not mentioned a single time in the Complaint, and his connection to these matter is entirely unclear based on the face of the Complaint. Only from Defendants' memorandum in support of the motion to dismiss does the Court learn that "Bannon [was] an individual adjuster involved in Plaintiff's insurance claim." (R. 4, PageID# 153). According to Defendants, "[a]lthough Bannon uses a [Pennsylvania] PO Box as the address in his email signature, Bannon is a resident of Ohio." (R. 4, PageID# 154). Plaintiff's opposition brief denies that Bannon was fraudulently joined to this action, but does "not object to his removal from this suit." (R. 7, PageID# 171). Given the dearth of any factual allegations against Bannon, he is dismissed from this action.

**A. Count Two: Breach of Contract**

Liberty argues that Plaintiff's breach of contract claim fails because it is barred by the Policy's "Suit Against Us" provision's one-year time limit. (R. 4, PageID# 156-158).

Under Ohio law, "An insurance policy is a contract whose interpretation is a matter of law… [and its] terms are to be given their plain and ordinary meaning." *Sharonville v. Am.*

4

*Employers Ins. Co.*, 109 Ohio St.3d 186, 846 N.E.2d 833, ¶ 6 (citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978) and *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167–168, 436 N.E.2d 1347 (Ohio 1982)). The Ohio Supreme Court has instructed to "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256, 1261 (Ohio 2003). Moreover, a court should "look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." *Id*. ("When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties."). The Ohio Supreme Court has "long adhered to the principle that ambiguous language in an insurance contract is construed against the insurance company," but ambiguity should not be inferred where it does not exist. *Dominish v. Nationwide Ins. Co.*, 129 Ohio St.3d 466, 467, 953 N.E.2d 820, 822 (Ohio 2011).

       Defendants assert the language is clear and unequivocal, while Plaintiff asserts the policy language is ambiguous. Plaintiff's brief in opposition points out that the policy contains two "Suits Against us" provisions, one of which does not contain a one-year time limit, to support his claim that the policy is ambiguous. (R. 7, PageID# 170). While Plaintiff is correct that there are two "Suit Against Us" provisions in the policy, the one that does not contain a one-year time limit clearly relates to *liability* coverage, as it states that "[n]o one will have the right to join us as a party to any action against an 'insured.' Also, no action with respect to Coverage E can be brought against us until the obligation of the 'insured' has been determined by final judgment or agreement signed by us." (R. 1-1, PageID# 37). Moreover, that language is contained under the heading "Section II – Conditions" proceeding directly after "Section II – Liability Coverages,"

"Section II – Exclusions," and "Section II – Additional Coverages."[2] (R. 1-1, PageID# 33-36). Finally, the "Coverage E" referred to in the other "Suit Against Us" section referenced by Plaintiff is for "Personal Liability" as plainly stated in the policy language. (R. 1-1, PageID# 33). The Court agrees with Defendants that the policy language—with respect to the "Suit Against Us" provision as it relates to property damage claims—is unequivocal and not susceptible to more than one reasonable meaning. It states: "[n]o action can be brought unless the policy provisions have been complied with *and the action is started within one year after the date of loss*." (R. 1-1, PageID# 32, Exh. A to the Compl., ¶8) (emphasis added). Under the plain language of the Policy, Plaintiff was obligated to initiate any lawsuit related to his property damage stemming from the October 2, 2022 fire within one-year. Plaintiff failed to do so, as he did not file suit until approximately 22 months after the fire.

Under Ohio law, "[a] contract for insurance may lawfully limit the time within which a suit may be commenced on the contract, even though this period is shorter in duration than that of the applicable statute, as long as the limitations period is not unreasonable." *Klein v. State Farm Fire & Cas.*, 250 Fed. App'x 150, 155 (6th Cir. 2007) (citing *Hounshell v. American States Ins. Co.*, 67 Ohio St.2d 427, 429, 424 N.E.2d 311 (1981)). Further, "[a] limitations period requiring commencement of a suit to a period of twelve months is not unreasonable." *Id*. at 155, 424 N.E.2d 311 (citing *Appel v. Cooper Ins. Co.*, 76 Ohio St. 52, 80 N.E. 955 (1907)).[3] As

---

[2] These additional coverages also plainly relate to personal liability actions against the insured, as they cover costs taxed against the insured in any suit Liberty defends, loss of earnings by an insured for assisting Liberty in the investigation or defense of a claim, etc. (R. 1-1, PageID# 35).

[3] *See also Cooper v. Liberty Mut. Fire Ins. Co.*, No. 2:20-CV-6542, 2021 WL 5296900, at *2 (S.D. Ohio 2021) ("Ohio law has established that a limitation of one year for bringing suit is valid and enforceable."); *Kelley v. Travelers Ins. Co.*, 9 Ohio App.3d 58, 59, 458 N.E.2d 406 (Ohio Ct. App. 1983) ("a twelve-month contractual limitations provision is valid and enforceable in Ohio").

explained by the Ohio Supreme Court in *Dominish*, where "[t]he policy states in language clear enough to be plainly understood that any lawsuit by an insured . . . must be commenced within one year of the loss or damage sustained" the policy is not ambiguous and the limitation is enforceable. 129 Ohio St.3d 468.

Therefore, Plaintiff's breach of contract claims against Liberty is untimely under the express and unambiguous terms of the insurance contract, and this claim is dismissed.

**B. Count One: Bad Faith**

**1. Bad Faith Claims in Complaint Contingent on Breach of Contract Claim**

Defendant Liberty asserts that because Plaintiff failed to timely assert his bad faith claim under the Suit Against Us Provision, his bad faith claim must also be dismissed as untimely. (R. 4). The law on this issue is not as straightforward as implied by Defendant's brief.

> Ohio recognizes two types of bad faith claims in this context. *See Bullet Trucking, Inc.*, 84 Ohio App. 3d at 334; *Korwin v. State Farm Fire & Cas. Co.*, No. 5:23-CV-1124, 2024 U.S. Dist. LEXIS 63462, 2024 WL 1514537, at *6 (N.D. Ohio Apr. 8, 2024). The first type of bad faith claim requires that the plaintiff "prove that the insurer had no lawful basis to deny coverage." *Essad v. Cincinnati Cas. Co.*, 2002-Ohio-2002, ¶ 34. The second type of bad faith claim arises from "an intentional failure to determine whether there was any lawful basis" for denying coverage. *Id*. at ¶ 32. A critical difference between the two types of bad faith claims is that the second type may arise independent of a breach of contract claim, while the viability of the first type "hinges on the success of the contract claim." *Id*. ¶ 34.

*Huntington Nat'l Bank v. AIG Specialty Ins. Co.*, No. 2:20-cv-00256, at *22-23 (S.D. Ohio June 27, 2024); *Ransom v. Erie Ins. Co.*, 2022-Ohio-3528, ¶ 44, 198 N.E.3d 546, 553 (Ohio Ct. App. 2022) (acknowledging that Ohio courts "have recognized two different types of bad faith claims—the first is when a claimant must prove the insurer had no lawful basis to deny coverage, and the second is when the claimant does not have to establish the underlying coverage since the claim arises from the company having a lack of a reasonable justification to act in the manner it

did."); *Jordan v. Liberty Mut. Fire Ins. Co.*, No. 4:19CV0093, 2019 WL 3082304, at *4 (N.D. Ohio July 15, 2019) ("The first type involves the merits of the contract claim. Therefore, in this type of bad faith claim, the success of the tort claim hinges on the success of the contract claim.") (citing *Ballard v. Nationwide Ins. Co.*, 46 N.E.3d 170, 173-74 at ¶ 18 (Ohio Ct. App. Oct. 22, 2015)); *Mid-American Fire & Cas. Co. v. Broughton*, 154 Ohio App. 3d 728, 735, 798 N.E.2d 1109, 1115 (Ohio Ct. App. 2003) (finding that trial court properly dismissed a bad faith claim *sua sponte* that was predicated upon the first type of bad faith claim, which is dependent on proving the underlying contract claim); *cf. Korwin v. State Farm Fire & Cas. Co.*, No. 5:23-cv-1124, at *21 (N.D. Ohio Apr. 8, 2024) (finding plaintiffs' bad faith claim in the case before it claim was not contingent on its breach of contract claim, as it "clearly invoke[d] the second type of bad faith claim").

It is clear from the Complaint that Liberty did not assert that coverage was unavailable for the fire damage or to deny the claim in its entirety, as Plaintiff admits Liberty issued a $148,156.49 payment related to the fire damage. (R. 1-1, PageID# 138, Exh. E). Thus, the dispute revolves around the full extent of the amounts recoverable and not an outright denial of a covered claim. The Court does not construe the Complaint as raising the second type of bad faith claim (*i.e* where the insurer failed to determine whether there was a lawful basis for the refusal of a claim). The clear thrust of the Complaint is that Plaintiff simply believes he was owed additional money under the policy, an averment that would require him to show that Liberty breached the contract itself. Because this case involves the first type of bad faith claim, the success of Plaintiff's bad faith tort claim hinges on the success of the contract claim—a claim he cannot bring as it is barred by the policy's time constraints as explained *supra*. Consequently, Plaintiff's bad faith claim is untimely and is dismissed.

Finally, many of the actions cited in the Complaint as evidence of Liberty's alleged bad faith, as discussed more fully below, are specifically permitted by the policy and, therefore, also are contingent on finding a breach of contract.

**2. Failure to Allege Plausible Claims**

Even if Plaintiff's claim was not barred as dependent upon his breach of contract claim, the Complaint fails to plausibly allege a bad faith claim.

> Courts must accept as true all well-pleaded factual allegations, **but they need not accept legal conclusions**. *Iqbal*, 556 U.S. at 678. And the well-pleaded factual allegations must "plausibly give rise to an entitlement to relief." *Id*. at 679. Pleaded facts will do so if they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Pleaded facts will not do so if they "are 'merely consistent with' a defendant's liability." *Id*. (*quoting Twombly*, 550 U.S. at 557).

*Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (emphasis added). Federal courts must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and draw all reasonable inferences in [the plaintiff's] favor." *Watkins v. Healy*, 986 F.3d 648, 660 (6th Cir. 2021) (citations omitted). Nevertheless, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677–78 (internal citations omitted). A court "is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Doe v. Toys R Us*, No. 10 CV 2116, 2010 U.S. Dist. LEXIS 79916, at *5-6 (N.D. Ill. Aug. 5, 2010) (*citing Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992)). "Plaintiff's own 'subjective beliefs as to the motivation of others are insufficient' to meet his burden" to plead a plausible cause of action. *Mahmood Husam Altabra v. Univ. of Tex. at Austin*, 2024 U.S. Dist. LEXIS 41380, at *17 (W.D. Tex. Mar. 7, 2024) (*citing*

*Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 924 (5th Cir. 2022)).

The Complaint alleges that Liberty was "not acting in good faith and was giving [him] the run around regarding his homeowners insurance." (R. 101, PageID# 10, ¶4). This averment is entirely conclusory and unsupported by factual allegations. Plaintiff's assertion that Liberty mailed a check to him utilizing the address of the property that suffered the fire damage, which this Court assumes to be true for the purposes of this motion, also fails to raise a plausible bad faith claim. The Court is unaware of any Ohio law suggesting that mailing an insurance check to the wrong address—let alone an address that is unequivocally associated with the insured—is evidence of bad faith.[4]

Plaintiff also alleges Liberty refused to purchase the land where the property was situated, but cites no provision of the policy that would require it to do so. (R. 1-1, PageID# 11, ¶6). The Court's own review of the policy did not unearth any such provision. The policy does state, however, that with respect to property coverage, such "coverage does not apply to land, including land on which the dwelling is located." (R. 1-1, PageID# 23). The Court finds that Liberty's failure to take an action it was not obligated to undertake per the policy is not evidence of bad faith.

Plaintiff also takes issue with Liberty sending a check in both Plaintiff's name and the title company's name. (R. 1-1, PageID# 11, ¶¶6, 8). However, the policy's mortgage clause does state that "any loss payable under Coverage A or B will be paid to the mortgagee and you, as

---

[4] In a non-Ohio case, a plaintiff had argued that a settlement check sent to the wrong address, was evidence of negligence in handling the claim and, therefore, bad faith. *Kemp v. USAA Cas. Ins. Co.*, 709 Fed. App'x 650, 653 (11th Cir. 2017). While the address issue was not dispositive on its own, the Court of Appeals affirmed the lower Court's grant of summary judgment in defendant's favor finding no reasonable jury could conclude that the insurer's conduct rose to the level of bad faith.

interests appear." (R. 1-1, PageID# 32, ¶12).

Plaintiff also takes issue with being interviewed by Liberty in connection with his claim. (R. 1-1, PageID# 12, ¶12). The Policy, however, sets forth an insured's "Duties After Loss," which includes, [a]s often as [Liberty] reasonably require[s]: … Submit to examination under oath, while not in the presence of any other 'insured,' and sign the same[.]" (R. 1-1, PageID# 30, ¶2(f)). No bad faith can be attributed to Liberty's requests for interviews under oath. Plaintiff also takes issue with Liberty trying to interview another individual, Racine Williams, whom the Complaint alleges as having no interest in the policy or claim. (R. 1-1, PageID# 12, ¶13). The policy, however, lists the insured as "Home Realty Properties LLC" and "Jodie Turner." (R. 1-1, PageID# 16-17). According to the Ohio Secretary of State's business search page, Racine Williams is listed as the agent/registrant for Home Realty Properties LLC. As such, the Court finds no bad faith can be gleaned from its desire to interview this individual in connection with the claim.

Finally, Plaintiff takes issue with Liberty not disbursing all funds to which he believes he is entitled, not receiving a response when asking for an extension of time to complete the rebuild of the structure, or being furnished a different breakdown of the settlement per depreciation. (R. 1-1, PageID# 11, ¶¶6-8, 23, 24). Under Ohio law, "a reasonable dispute as to the value of a claim does not, in and of itself, constitute bad faith." *Toman v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 4979577, 2015-Ohio-3351, ¶ 31 (Ohio Ct. App. 2015) (citing *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 277, 452 N.E.2d 1315, 1320 (1983) ("Mere refusal to pay insurance is not, in itself, conclusive of bad faith.")

The Court funds that dismissal is appropriate. Plaintiff has failed to state a plausible bad faith claim, alleging facts that—even if believed to be true—are incapable, on their own or in

combination, of raising a successful claim.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (R. 4) is hereby GRANTED. This action is hereby DISMISSED with prejudice.

IT IS SO ORDERED.

s/ *David A. Ruiz*  
David A. Ruiz  
United States District Judge

Date: September 30, 2025